UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD DEAN YANDELL,<br><br>Plaintiff,<br><br>v.<br><br>DONALD WASHINGTON, et al.,<br><br>Defendants. | No. 2:21-cv-00469 JAM AC<br><br><br><br>ORDER |

Plaintiff, a pretrial detainee proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. The original complaint, ECF No. 1, was found on screening not to state a claim for relief and therefore was not served. See ECF No. 8. Plaintiff was granted leave to amend, and his First Amended Complaint is now before the court.

I.  Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

1

Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

II. First Amended Complaint

Plaintiff is a federal pretrial detainee being held in the Sacramento County Jail, who challenges the conditions of his confinement. The undersigned takes judicial notice of the fact that plaintiff is charged in Case No. 2:19-cr-00107 KJM with offenses including racketeering conspiracy, conspiracy to commit murder, and multiple drug offenses.[1] It is a potentially capital prosecution. The government has alleged that plaintiff is an Aryan Brotherhood member who ran a major racketeering enterprise from within state prison. Plaintiff was transferred from the custody of the California Department of Corrections and Rehabilitation to the custody of the U.S. Marshal for purposes of the present federal prosecution. The USMS contracts with Sacramento County for the housing of federal pretrial detainees at the county jail.

The First Amended Complaint, ECF No. 11, challenges plaintiff's placement in the jail's Total Separation Unit and alleges denial of confidential legal visits, retaliation in the form of frequent and harassing cell moves, denial of outdoor recreation, and denial of a religions (vegetarian) diet. Plaintiff names eight defendants: Sacramento County Sheriff Scott Jones; Sacramento County Jail Commander Brandon Luke; Assistant Commander McKrasie; Assistant Commander Hampton; Sergeant Schaller; Sergeant Pfau; Intelligence Deputy Saika; and Terry Toliver, the jail chaplain.

III. Failure to State a Claim

A. Legal Standards Governing Rights of Pretrial Detainees

The rights of pretrial detainees are grounded in the Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 545 (1979); Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). Detainees have a substantive due process right against restrictions that amount to punishment. Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing United States v. Salerno, 481 U.S. 739, 746 (1987)). "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." Demery v. Arpaio, 378 F.3d 1020, 1029

---

[1] See Fed. R. Evid. 201(b). It is well established that a court may take judicial notice of its own records. See United States v. Author Servs., Inc., 804 F.2d 1520, 1523 (9th Cir. 1986).

(9th Cir. 2004) (citing Bell, 441 U.S. at 538). "Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate a pretrial detainee's right to be free from punishment." Hatter v. Dyer, 154 F. Supp. 3d 940, 945 (C.D. Cal. 2015) (citing Block v. Rutherford, 468 U.S. 576, 584 (1984)).

In the first step of this inquiry, "the harm or disability . . . must either significantly exceed, or be independent of, the inherent discomforts of confinement." Id. at 1030 (citing Bell, 441 U.S. at 537). To determine punitive intent, courts "first examine whether the restriction is based upon an express intent to inflict punishment." Valdez, 302 F.3d at 1045 (citing Salerno, 481 U.S. at 746). Courts "next consider whether punitive intent can be inferred from the nature of the restriction. This determination . . . will generally turn upon 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it].'" Id. (citing Bell, 441 U.S. at 539) (brackets in original).

As to any condition of confinement alleged to be unconstitutional, plaintiff must plead facts that demonstrate both (1) harm to plaintiff and (2) an intent to punish plaintiff, rather than a legitimate penological rationale, motivating the challenged action or restriction. He has not done so in the complaint before the court. Conclusory allegations regarding intent are insufficient. See Iqbal, 556 U.S. at 678. At a minimum plaintiff must state facts which, accepted as true, support an inference of punitive effect and intent as to any particular condition he challenges.

      B.  Claim One: Placement in Total Separation Unit

Upon transfer from Folsom State Prison to the Sacramento County Jail for purposes of federal prosecution, plaintiff was assigned to the jail's Total Separation Unit where prisoners are kept in single cells up to 22 1/2 hours a day.[2] ECF No. 11 at 6. Plaintiff did not receive a hearing prior to this placement. Id. at 7. He claims that TSU placement violates his constitutional rights

---

[2] The Total Separation Unit "is reserved for inmates that present a high security risk, such as inmates accused of notorious crimes, inmates who have demonstrated an unwillingness to follow facility rules, inmates that have been violent with others, and inmates that may be targets of violence by other inmates. . . . Inmates in the Total Separation Unit are housed in a cell alone and separated from all other inmates." Harlan v. County of Sacramento, Case No. 2:16-cv-02400-JAM, ECF No. 21 at 2, 2018 U.S. Dist. LEXIS 53773 *1-2 (E.D. Cal. March 29, 2018).

1   and the policies set forth in the remedial plan enacted in <u>Mays v. County of Sacramento</u>, Case No.
2   2:18-cv-02081 TLN KJN.  Specifically, plaintiff challenges "the constitutionality of the jail
3   commander's executive decision to place plaintiff in long-term confinement without proper due
4   process procedures."  <u>Id.</u>  Plaintiff alleges further, and without elaboration, that he "does not meet
5   the criteria for long term isolation."  <u>Id.</u> at 11.

6        These allegations do not state a claim for relief.  First, the Due Process Clause does not
7   necessarily require a hearing prior to non-punitive isolation.  A pretrial detainee may not be
8   subjected to disciplinary segregation as punishment for violation of jail rules and regulations
9   without notice and a hearing.  See <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 523-26 (9th Cir. 1996).
10  Plaintiff's restricted housing status, however, is not alleged to be a punitive response to violation
11  of jail rules.

12       Second, plaintiff fails to identify the provisions of the <u>Mays</u> decree that have allegedly
13  been violated.  In any case, as plaintiff has previously been informed, the violation of institutional
14  policies (including those adopted pursuant to consent decree) does not itself support a § 1983
15  claim; plaintiff must identify a violation of his constitutional rights.  See <u>Case v. Kitsap County
16  Sheriff's Dep't</u>, 249 F.3d 921, 930 (9th Cir. 2001) (quoting <u>Gardner v. Howard</u>, 109 F.3d 427,
17  430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy.  [Plaintiff] must
18  prove that [the official] violated his constitutional right . . . .").  If plaintiff wishes to rely here on
19  an alleged violation of the <u>Mays</u> decree, he must identify the provision that has been violated and
20  specify how that violation also violates his constitutional rights.

21       Third, plaintiff has not identified the criteria for TSU placement that he claims not to
22  meet, nor has he presented facts showing that his placement is unjustified by security concerns.
23  Decisions to house certain high-risk offenders in the TSU are classification decisions, and the
24  Ninth Circuit has held that pretrial detainees have "no constitutional right to a particular
25  classification status."  <u>Hernandez v. Johnston</u>, 833 F.2d 1316, 1318 (9th Cir. 1987).  Jails may
26  take measures to maintain institutional security and preserve internal order, even when such
27  measures infringe on specific constitutional guarantees; such measures "must be evaluated in the
28  light of the central objective of prison administration, safeguarding institutional security."  <u>Bell</u>,

441 U.S. at 546-547; see also Salerno, 481 U.S. at 747 (there is no constitutional infringement if restrictions are "but an incident of some other legitimate government purpose."). Plaintiff has a serious criminal history, he is known to law enforcement as an Aryan Brotherhood member, and he is accused of notorious crimes involving sophisticated offenses committed while incarcerated, all of which may be judicially noticed in this context[3] and all of which indicate legitimate institutional security concerns. Plaintiff has provided no facts suggesting that his TSU placement was motivated by an intent to punish rather than by such security concerns. Accordingly, the facts alleged do not demonstrate a violation of plaintiff's Fourteenth Amendment rights. See Block, 468 U.S. at 584 (no constitutional violation absent intent to punish); Demery, 378 F.3d at 1029 (same).

Fourth, to the extent that plaintiff challenges the operation of a County custom or policy, including the vesting of placement discretion in the jail commander, he has not provided enough information about the custom or policy for a determination at the screening stage that there is a cognizable claim of unconstitutionality. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); City of Canton v. Harris, 489 U.S. 378, 385 (1989). Plaintiff has previously been informed of this requirement.

### C. Claim Two: Confidential Legal Visits

The FAC alleges that the attorney-client visiting booth available to plaintiff does not provide for truly confidential legal visits; it is not sound-proof, and conversations can be overheard from the adjacent social visiting area. ECF No. 11 at 7, 11-12. Plaintiff alleges that Sheriff Jones, Commander Luke and Sgts. Schaller and McKrasie are responsible as policy makers and because they denied plaintiff's grievances of the issue. Id. at 12.

As the undersigned noted in screening the original complaint, infringements on the attorney-client relationship in violation of the Sixth Amendment's guarantee of effective legal assistance do not support civil liability under § 1983. ECF No. 8 at 7-8 & n. 4. However, the constitutional right of access to courts includes legal visitation and confidential communications

---

[3] See fn. 1, supra.

with counsel. Ching v. Lewis, 895 F.2d 608, 610 (9th Cir. 1990); Hydrick v. Hunter, 500 F.3d 978, 999 (9th Cir. 2007) (overruled on other grounds). This right is not absolute; like other rights of pretrial detainees, visits may be denied or limited for legitimate reasons. See Block, 468 U.S. at 585-89; Salerno, 481 U.S. at 747. To state a denial of access claim, the plaintiff must state facts showing that he suffered an actual injury—that the defendants' actions "hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996).

Plaintiff has alleged no facts supporting an actual injury, and thus has not stated a claim for relief. Even assuming that actual confidential communications have been overheard (which plaintiff has not alleged), that would demonstrate a violation of attorney-client confidentiality but not any resulting harm to plaintiff's defense in the criminal case. That is the kind of "actual injury" that Lewis v. Casey contemplates; a chilling effect on attorney-client conversations is not enough. See id. at 354-355 ("the actual injury requirement is not satisfied by just any type of frustrated legal claim[,]" but requires a showing that plaintiff actually forfeited the opportunity to attack his sentence or challenge his conditions of confinement). Plaintiff has not demonstrated any concrete prejudice to his defense against the criminal charges he faces. Although the FAC articulates a legitimate grievance, it does not identify a completed constitutional injury that can support a § 1983 claim.

### D. Claim Three: Retaliation

The FAC alleges that plaintiff was involved in a physical altercation with deputies on July 11, 2020, and that he has since been harassed in retaliation for that incident. ECF No. 8 at 8, 12-13. Specifically, plaintiff has been moved from cell to cell on a weekly basis, often in the middle of the night, in a deliberate attempt to make him uncomfortable. Id. at 8. Plaintiff's cell and property are tossed in relation to the moves, and he is exposed to unsanitary conditions. Id. at 8-9. Two midnight raids of plaintiff's pod in March of 2021 are also alleged to have been acts of retaliatory harassment. Id. at 9. The campaign of harassment began shortly after the physical alteration in July of 2020 and continued through at least April of 2021. Id.

Adverse actions taken against a prisoner violate the constitution and support relief under § 1983, even when the actions themselves do not rise to the level of an independent constitutional

violation, when taken in retaliation for constitutionally protected conduct. See Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017); Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff's claim of retaliation for a physical altercation does not state a claim for relief, because defendant's alleged motivation for the adverse actions did not involve plaintiff's exercise of his constitutional rights.

### E. Claim Four: Denial of Outdoor Exercise

Plaintiff alleges that he was not allowed outside recreation at all from October 2020 to March 2021, and now receives only 4-5 hours per month. ECF No. 11 at 10, 13-14. Although prison and jail inmates must be provided opportunities for exercise, restrictions for security reasons do not violate the Constitution. LeMaire v. Maass, 12 F.3d 1444, 1457-1958 (9th Cir. 1993) (upholding long-term denial of outdoor exercise to prisoner posing serious security risk who can exercise in his cell). As a pretrial detainee, plaintiff can only state a claim by providing facts that show the restriction rises to the level of punishment and is not a permissible "regulatory restraint" justified by security considerations. See Bell, 441 U.S. at 537. He must also allege facts demonstrating punitive intent. See Demery, 378 F.3d at 1029. The FAC is devoid of such allegations.

Plaintiff was previously informed of the need to provide additional facts, but the FAC lacks any information about plaintiff's opportunity for indoor exercise or any asserted security reasons provided for the limitations on his outside exercise. The court cannot tell whether plaintiff challenges the recreation program applicable to him as a TSU inmate, or whether he is being denied exercise provided to other TSU inmates—and if so, on what basis. If plaintiff is challenging a jail policy regarding exercise available to detainees housed in the TSU, he must identify the policy.

### F. Claim Five: Denial of Religious Diet

The FAC alleges that plaintiff's religious rights are violated by the jail chaplain's denial of his request for a "vegetarian diet in line with plaintiff's Buddhism beliefs of not eating meat or foods processed with animal by-products." ECF No. 11 at 14-15. Plaintiff also asserts a right to a vegetarian diet for personal or health reasons under "Senate Bill 1138." Id. at 10, 15. Plaintiff

8

alleges that when he requested a special diet for religious reasons, Chaplain Tolliver responded "by having plaintiff answer religious questions as some kind of test." Id. at 10. The chaplain then denied the request as insincere. Plaintiff objects to being required to explain his religious beliefs; he also appears to object to having his request evaluated by "a Catholic chaplain concerning a religion not of his faith." Id.

Plaintiff cannot base a § 1983 claim on alleged violation of a state statute such as Senate Bill 1138. See 42 U.S.C. § 1983 (providing remedy for violations of the U.S. Constitution and other federal law). The federal constitutional right at issue is the free exercise of religion as guaranteed by the First Amendment, which incarcerated people do not forfeit. See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122-23 (9th Cir. 2013). In the religious diet context, incarcerated persons "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea, 833 F.2d at 198.

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion. A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jones v. Williams, 791 F.3d 1023, 1031-32 (9th Cir. 2015) (citations, internal quotation marks, punctuation and alterations omitted). Plaintiff must demonstrate that jail officials substantially burdened the free exercise of his religion by preventing him from engaging in conduct which he sincerely believes is required by his faith (or coercing conduct contrary to his faith). Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). The underlying religious belief must be "sincerely held." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see also Shakur, 514 F.3d at 884-85 (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis).

The allegations of the FAC do not demonstrate that plaintiff is being denied food that is sufficient to sustain his health and that that satisfies the dietary laws of his religion. See McElyea, 833 F.2d at 198. No information is provided about what non-meat protein sources are

9

available to plaintiff, what food "processed with animal by-products" he objects to, or what specific religious prohibition is violated by consuming such items. Plaintiff's conclusory allegation that he requires an animal-free diet because of his "Buddhism belief" is insufficient; not all Buddhists refrain from eating meat and not all vegetarian Buddhists are vegan. Plaintiff must connect the dots between his religious belief and the diet he requests. This does not require plaintiff to include a religious treatise in his complaint, nor pass any religious test; indeed, the religious "centrality" of vegetarianism to his branch of Buddhism is not relevant. See Shakur, 514 F.3d at 884-85. However, plaintiff nonetheless must plead facts demonstrating his own sincere belief that a particular diet is required for religious observance, and that the diet he is being provided forces him to choose between adequate nutrition and violation of his religious precepts. Without such allegations, he has not shown a substantial burden on his exercise of religion.

Defendant Tolliver's own religious affiliation is irrelevant. Plaintiff does not have any right to a chaplain of his own faith. See Hartmann, 707 F.3d at 1122-23 (and cases cited therein).

### IV. The First Amended Complaint Will Not Be Served

For the reasons explained above, the facts alleged in the FAC fail to state any claim for which relief may be granted against any defendant. Accordingly, the complaint is subject to summary dismissal under 28 U.S.C. § 1915A. Plaintiff will be given another opportunity to amend.

### V. Leave to Amend

If plaintiff chooses to file a first amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.

1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his first amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled in subsequent amended complaint to preserve appeal).  Once plaintiff files a first amended complaint, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

VI.     Plain Language Summary of this Order for a Pro Se Litigant

The First Amended Complaint will not be served because the facts you have alleged are not enough to state a claim for relief.  The problems with each specific claim are explained above.  In general, the Eighth Amendment does not apply because you are a pretrial detainee.  To challenge any condition of your confinement, you must state facts showing (1) that the condition is harming you and (2) that you are being subjected to it in order to punish you rather than for reasons of jail security.  Also, for each claim you must specify which defendant(s) are responsible and what they did or didn't do that caused the violation of your rights.  If you are challenging a jail policy, you need to say what the policy is and how it has been applied to you.

You may file a second amended complaint.  If you choose to amend, the second amended complaint must include all of the claims you want to make because the court will not look at the claims or information in the original complaint.  **Any claims not in the second amended complaint will not be considered.**

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's First Amendment Complaint, ECF No. 11, has been screened pursuant to 28 U.S.C. § 1915A and found not to state a claim for relief.

      2. Within thirty days from the date of service of this order, plaintiff may file a Second Amended Complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint." Plaintiff must file an original and two copies of the amended complaint. Failure to file a second amended complaint in accordance with this order will result in dismissal of this action.

      3. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

DATED: July 21, 2021

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE