1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RONALD DEAN YANDELL,                        No.  2:21-cv-00469 JAM AC

12                  Plaintiff,

13           v.                                    FINDINGS AND RECOMMENDATIONS

14    DONALD WASHINGTON, et al.,

15                  Defendants.

16

17          Plaintiff, a pretrial detainee proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.

18    The original and first amended complaints, ECF Nos. 1 & 11, were found on screening not to

19    state a claim for relief.  See ECF Nos. 8, 13.  Plaintiff was granted leave to amend for a second

20    time, and his Second Amended Complaint, ECF No. 14, is now before the court.

21          I.     Statutory Screening of Prisoner Complaints

22          The court is required to screen complaints brought by prisoners seeking relief against a

23    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24    court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

25    "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[]

26    monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

27          A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."

28    Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

1

Cir. 1984).  "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'"  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citations omitted).  "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'"  Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

1    II.      Second Amended Complaint

2          Plaintiff is a federal pretrial detainee being held in the Sacramento County Jail, who

3    challenges the conditions of his confinement.  The undersigned takes judicial notice of the fact

4    that plaintiff is charged in Case No. 2:19-cr-00107 KJM with offenses including racketeering

5    conspiracy, conspiracy to commit murder, and multiple drug offenses.[1]  It is a potentially capital

6    prosecution.  The government has alleged that plaintiff is an Aryan Brotherhood member who ran

7    a major racketeering enterprise from within state prison.  Plaintiff was transferred from the

8    custody of the California Department of Corrections and Rehabilitation to the custody of the U.S.

9    Marshal for purposes of the present federal prosecution.  The USMS contracts with Sacramento

10   County for the housing of federal pretrial detainees at the county jail.

11         Like the First Amended Complaint, the Second Amended Complaint challenges plaintiff's

12   placement in the jail's Total Separation Unit (Claim One) and alleges denial of confidential legal

13   visits (Claim Two), retaliation in the form of frequent and harassing cell moves (Claim Three),

14   denial of outdoor recreation (Claim Four), and denial of a religious diet (Claim Five).  Plaintiff

15   names eight defendants: Sacramento County Sheriff Scott Jones; Sacramento County Jail

16   Commander Brandon Luke; Assistant Commander McKrasie; Assistant Commander Hampton;

17   Sergeant Schaller; Sergeant Pfau; Sergeant Saika; and Terry Toliver, the jail chaplain.

18   III.     Plaintiff Has Stated A Cognizable Claim Based on Denial of a Religious Diet

19         Claim Five alleges that plaintiff's religious rights have been violated by the jail chaplain's

20   denial of his request for a "vegetarian diet consistent with plaintiff's Buddhism beliefs of not

21   eating animals or foods processed with animal by-products."  ECF No. 14 at 27.  Plaintiff alleges

22   that he is a practicing Buddhist.  He sent a request for vegetarian meals to Chaplain Toliver, who

23   asked for an explanation of plaintiff's beliefs.  Plaintiff provided an explanation of the religious

24   precepts that prohibit eating meat.  Plaintiff told Toliver that vegetarianism is a "core Buddhism

25   doctrine" that he wishes to follow.  Id. at 13.  The request was ultimately rejected as insincere, on

26   grounds that plaintiff had not made the request when he first came into custody.  Id.; see also id.

27

28   [1]  See Fed. R. Evid. 201(b).  It is well established that a court may take judicial notice of its own
     records.  See United States v. Author Servs., Inc., 804 F.2d 1520, 1523 (9th Cir. 1986).

1    at 49 (grievance reply form dated March 10, 2020).

2           Incarcerated people do not forfeit their First Amendment right to the free exercise of

3    religion.  See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987); Hartmann v. California

4    Dep't of Corr. & Rehab., 707 F.3d 1114, 1122-23 (9th Cir. 2013).  In the religious diet context,

5    inmates "have the right to be provided with food sufficient to sustain them in good health that

6    satisfies the dietary laws of their religion."  McElyea, 833 F.2d at 198.  As in any free exercise

7    claim, a plaintiff must demonstrate that officials substantially burdened the exercise of his

8    religion by preventing him from engaging in conduct which he sincerely believes is required by

9    his faith.  Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).  The underlying religious

10   belief must be "sincerely held."  Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see also

11   Shakur, 514 F.3d at 884-85 (noting that the "sincerity test," not the "centrality test," applies to a

12   free exercise analysis).

13          On screening the court accepts the professed sincerity of plaintiff's religious belief, as it

14   must accept the truth of all factual allegations.  As plaintiff emphasizes in the SAC, a request for

15   religious diet made for the first time after someone has been in custody is not necessarily

16   insincere.  The allegations of Claim Five are sufficient to state a claim for relief.  Because

17   plaintiff seeks both damages and injunctive relief, the undersigned will recommend that this claim

18   proceed both against Chaplain Toliver, as the person alleged to have caused the deprivation of

19   plaintiff's rights, and the Sheriff in his official capacity for purposes of injunctive relief only.

20          IV.     Failure to State a Claim

21                  A.  Legal Standards Governing Rights of Pretrial Detainees

22          The rights of pretrial detainees are grounded in the Due Process Clause.  Bell v. Wolfish,

23   441 U.S. 520, 545 (1979); Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008).

24   Detainees have a substantive due process right against restrictions that amount to punishment.

25   Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing United States v. Salerno, 481

26   U.S. 739, 746 (1987)).  "For a particular governmental action to constitute punishment, (1) that

27   action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the

28   governmental action must be to punish the detainee."  Demery v. Arpaio, 378 F.3d 1020, 1029

                                                    4

1  (9th Cir. 2004) (citing <u>Bell</u>, 441 U.S. at 538).  "Unless there is evidence of intent to punish, then

2  those conditions or restrictions that are reasonably related to legitimate penological objectives do

3  not violate a pretrial detainee's right to be free from punishment."  <u>Hatter v. Dyer</u>, 154 F. Supp.

4  3d 940, 945 (C.D. Cal. 2015) (citing <u>Block v. Rutherford</u>, 468 U.S. 576, 584 (1984)).

5       In the first step of this inquiry, "the harm or disability . . . must either significantly exceed,

6  or be independent of, the inherent discomforts of confinement."  <u>Id.</u> at 1030 (citing <u>Bell</u>, 441 U.S.

7  at 537).  To determine punitive intent, courts "first examine whether the restriction is based upon

8  an express intent to inflict punishment."  <u>Valdez</u>, 302 F.3d at 1045 (citing <u>Salerno</u>, 481 U.S. at

9  746).  Courts "next consider whether punitive intent can be inferred from the nature of the

10  restriction.  This determination . . . will generally turn upon 'whether an alternative purpose to

11  which [the restriction] may rationally be connected is assignable for it, and whether [the

12  restriction] appears excessive in relation to the alternative purpose assigned [to it].'"  <u>Id.</u> (citing

13  <u>Bell</u>, 441 U.S. at 539) (brackets in original).

14       As to any condition of confinement alleged to be unconstitutional, plaintiff must plead

15  facts that demonstrate both (1) harm to plaintiff and (2) an intent to punish plaintiff, rather than a

16  legitimate penological rationale, motivating the challenged action or restriction.  He has not done

17  so in the complaint before the court.  Conclusory allegations regarding intent are insufficient.  <u>See</u>

18  <u>Iqbal</u>, 556 U.S. at 678.  At a minimum plaintiff must state facts which, accepted as true, support

19  an inference of punitive effect and intent as to any particular condition he challenges.

20       B.  <u>Claim One:  Placement in Total Separation Unit</u>

21       Upon transfer from Folsom State Prison to the Sacramento County Jail for purposes of

22  federal prosecution, plaintiff was assigned to the jail's Total Separation Unit ("TSU" or "T-Sep")

23  where prisoners are kept in single cells up to 22 1/2 hours a day.[2]  ECF No. 14 at 9.  Plaintiff did

24  not receive a hearing prior to this placement.  <u>Id.</u> at 10.  He claims that TSU placement violates

25  [2]  The Total Separation Unit "is reserved for inmates that present a high security risk, such as
26  inmates accused of notorious crimes, inmates who have demonstrated an unwillingness to follow
   facility rules, inmates that have been violent with others, and inmates that may be targets of
27  violence by other inmates. . . . Inmates in the Total Separation Unit are housed in a cell alone and
   separated from all other inmates."  <u>Harlan v. County of Sacramento</u>, Case No. 2:16-cv-02400-
28  JAM, ECF No. 21 at 2, 2018 U.S. Dist. LEXIS 53773 *1-2 (E.D. Cal. March 29, 2018).

5

1   his constitutional rights and the policies set forth in the remedial plan enacted in <u>Mays v. County</u>

2   <u>of Sacramento</u>, Case No. 2:18-cv-02081 TLN KJN.  Specifically, plaintiff challenges "the

3   constitutionality of the jail commander's executive decision to place plaintiff in T-Sep contrary to

4   plaintiff's due process rights."  <u>Id.</u>  Plaintiff contends summarily that the denial of an initial

5   hearing, denial of his related grievances, and failure to provide a status hearing and placement re-

6   evaluation every 15 days, all violate his right to due process and the <u>Mays</u> settlement agreement.

7   <u>Id.</u> at 14.

8          This claim is substantially identical to Claim One of the First Amended Complaint.  For

9   the same reasons explained in the previous screening orders, plaintiff's allegations do not state a

10  claim for relief.  The Due Process Clause does not require a hearing prior to non-punitive

11  isolation.  A pretrial detainee may not be subjected to disciplinary segregation as punishment for

12  violation of jail rules and regulations without notice and a hearing.  <u>See</u> <u>Mitchell v. Dupnik</u>, 75

13  F.3d 517, 523-26 (9th Cir. 1996).  Plaintiff's restricted housing status, however, is not alleged to

14  be a punitive response to a violation of jail rules.  Exhibit A to the SAC, ECF No. 14 at 34

15  (grievance reply form dated August 5, 2020), confirms that T-Sep is a housing designation rather

16  than a classification.[3]  The exhibit documents that plaintiff's housing designation was based on

17  his "high level of criminal sophistication, charges, criminal history and recent write up history,

18  for the safety and security of the facility, other inmates."  <u>Id.</u>  The limited due process rights

19  recognized in <u>Mitchell v. Dupnik</u>, <u>supra</u>, are not applicable here.

20         Jails may take measures to maintain institutional security and preserve internal order, even

21  when such measures infringe on specific constitutional guarantees; such measures "must be

22  evaluated in the light of the central objective of prison administration, safeguarding institutional

23  security."  <u>Bell</u>, 441 U.S. at 546-547; <u>see also</u> <u>Salerno</u>, 481 U.S. at 747 (there is no constitutional

24  infringement if restrictions are "but an incident of some other legitimate government purpose.").

25  Plaintiff indisputably has a serious criminal history, he is known to law enforcement as an Aryan

26  Brotherhood member, and he is accused of notorious crimes involving sophisticated offenses

27

28  [3]  In any event, pretrial detainees have "no constitutional right to a particular classification status."  <u>Hernandez v. Johnston</u>, 833 F.2d 1316, 1318 (9th Cir. 1987).

committed while incarcerated, all of which may be judicially noticed in this context[4] and all of

which indicate legitimate institutional security concerns.  Plaintiff has provided no facts

suggesting that his TSU placement was motivated by an intent to punish him rather than by such

security concerns.  Accordingly, the facts alleged do not demonstrate a violation of plaintiff's

Fourteenth Amendment rights.  See Block, 468 U.S. at 584 (no constitutional violation absent

intent to punish); Demery, 378 F.3d at 1029 (same).

Plaintiff again fails to identify any provisions of the Mays decree that have allegedly been

violated.  In any case, as plaintiff has twice previously been informed, the violation of

institutional policies (including those adopted pursuant to consent decree) does not itself support a

§ 1983 claim; plaintiff must identify a violation of his constitutional rights.  See Case v. Kitsap

County Sheriff's Dep't, 249 F.3d 921, 930 (9th Cir. 2001) (quoting Gardner v. Howard, 109 F.3d

427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy.  [Plaintiff]

must prove that [the official] violated his constitutional right . . . .").

Finally, to the extent that plaintiff challenges the operation of a County custom or policy,

including the vesting of placement discretion in the jail commander, he has not provided enough

information about the custom or policy for a determination at the screening stage that there is a

cognizable claim of unconstitutionality.  See Monell v. Department of Social Services, 436 U.S.

658, 694 (1978); City of Canton v. Harris, 489 U.S. 378, 385 (1989).  Plaintiff has twice

previously been informed of this requirement.  There is no facially apparent constitutional defect

in a policy that gives the commander ultimate authority to make housing decisions in the cases of

detainees posing the highest security risks.

For all these reasons, Claim One of the SAC fails to state a claim for relief.

C.  Claim Two: Confidential Legal Visits

The SAC alleges that the attorney-client visiting booth available to plaintiff does not

provide for truly confidential legal visits; it is not sound-proof, and conversations can be

overheard from the adjacent social visiting area.  ECF No. 14 at 10-11, 21-22.  Plaintiff alleges

---

[4]  See fn. 1, supra.

7

1  that Sheriff Jones, Commander Luke and Sgts. Schaller and McKrasie are responsible as policy

2  makers and because they denied plaintiff's grievances of the issue.  Id.

3        As the undersigned has noted in the previous screening orders, infringements on the

4  attorney-client relationship in violation of the Sixth Amendment's guarantee of effective legal

5  assistance do not support civil liability under § 1983.  ECF No. 8 at 7-8 & n. 4; ECF No. 13 at 6.

6  The SAC has supplemented Claim Two with declarations from members of the defense legal

7  team; these were filed in the underlying criminal case, in which this issue has been litigated.

8  These statements highlight the Sixth Amendment problem, but they cannot change the fact that

9  civil damages are unavailable as a remedy.  Sixth Amendment rights are trial rights, Martinez v.

10  Court of Appeal, 528 U.S. 152, 160-61 (2000), and the Ninth Circuit has never recognized a

11  cognizable claim for damages under § 1983 for restrictions on the attorney-client relationship in

12  alleged violation of the Sixth Amendment.[5]

13        However, the constitutional right of access to courts includes legal visitation and

14  confidential communications with counsel.  Ching v. Lewis, 895 F.2d 608, 610 (9th Cir. 1990);

15  Hydrick v. Hunter, 500 F.3d 978, 999 (9th Cir. 2007) (overruled on other grounds).  This right is

16  not absolute; like other rights of pretrial detainees, visits may be denied or limited for legitimate

17  reasons.  See Block, 468 U.S. at 585-89; Salerno, 481 U.S. at 747.  To state a denial of access

18  claim, the plaintiff must state facts showing that he suffered an actual injury—that the defendants'

19  actions "hindered his efforts to pursue a legal claim."  Lewis v. Casey, 518 U.S. 343, 351 (1996).

20        Plaintiff has alleged no facts supporting an actual injury, and thus has not stated an access

21  claim.  Even assuming that actual confidential communications have been overheard, that would

22  demonstrate a violation of attorney-client confidentiality but not any resulting harm to plaintiff's

23  defense in the criminal case.  That is the kind of "actual injury" that Lewis v. Casey contemplates;

24  a chilling effect on attorney-client conversations is not enough.  See id. at 354-355 ("the actual

---

[5]  In an unpublished case, the Court of Appeals has relied on Martinez to reject alleged Sixth
Amendment violations as the basis for a cognizable claim under § 1983.  Devon v. Roe, 81 Fed.
Appx. 147, 2003 U.S. App. LEXIS 23201 (9th Cir. 2003).  The absence of authority for the right
asserted by plaintiff supports dismissal at the screening stage on grounds of qualified immunity.
See Chavez v. Robinson, 817 F.3d 1162, 1169 (9th Cir. 2016) (district court may dismiss § 1983
complaint sua sponte and pre-service on grounds of qualified immunity).

1  injury requirement is not satisfied by just any type of frustrated legal claim[,]" but requires a

2  showing that plaintiff actually forfeited the opportunity to attack his sentence or challenge his

3  conditions of confinement).  Plaintiff has not demonstrated any concrete prejudice to his defense

4  against the criminal charges he faces.

5          Plaintiff fares no better under a First Amendment free speech or association theory.  See

6  ECF No. 14 at 22-23.  The Ninth Circuit has not recognized the availability of a pretrial

7  conditions of confinement claim on this basis, and plaintiff's out-of-circuit authorities are

8  inapposite.

9          Although the SAC articulates a legitimate grievance, it does not identify a completed

10 constitutional injury that can support a § 1983 claim based on interference with the attorney-

11 relationship.

12             D.  Claim Three: Retaliation

13         The SAC alleges that plaintiff was involved in a physical altercation with deputies on July

14 11, 2020, was subsequently found guilty of assault, and afterwards was harassed in retaliation for

15 that incident.  ECF No. 14 at 11-12, 23-24.  Specifically, plaintiff was moved from cell to cell on

16 a weekly basis, often in the middle of the night, in a deliberate attempt to make him

17 uncomfortable.  Id. at 24.  Plaintiff's cell and property were tossed in relation to the moves, and

18 he was exposed to unsanitary conditions.  Id. at 11-12.  Two midnight raids of plaintiff's pod in

19 March of 2021 are also alleged to have been acts of retaliatory harassment.  Id. at 12.  The

20 campaign of harassment began shortly after the physical alteration in July of 2020 and continued

21 through at least July of 2021.  Id.

22         Adverse actions taken against a prisoner violate the constitution and support relief under §

23 1983, even when the adverse actions themselves do not rise to the level of an independent

24 constitutional violation, when they are taken in retaliation for constitutionally protected conduct.

25 See Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017); Rhodes v. Robinson, 408 F.3d 559,

26 567-68 (9th Cir. 2005).  Plaintiff's claim of retaliation for a physical altercation does not state a

27 claim for relief, because defendant's alleged motivation for the adverse actions did not involve

28 plaintiff's exercise of his constitutional rights.

9

1    The SAC has beefed up the allegations of retaliatory intent by emphasizing the alleged

2    statements of deputies that they had been ordered by their supervisors to make plaintiff

3    uncomfortable, the temporal relationship between the July 11, 2020 incident and the onset of the

4    harassing behavior, and the absence of any jail policies supporting the frequent cell moves that

5    plaintiff has experienced.  See ECF No. 14 at 24-25.  These allegations do not cure the previously

6    identified defect of the claim, however.  Plaintiff cannot state a § 1983 claim for retaliation

7    because even if he was targeted for harassment, it was not on the basis of constitutionally

8    protected conduct.  Plaintiff had no constitutionally protected right to be involved in a physical

9    altercation with custodial officers, whether he was the aggressor or not.  These facts do not give

10   rise to a retaliation claim.

11              E.  Claim Four: Denial of Outdoor Exercise

12        Plaintiff alleges that he was not allowed outside recreation at all from October 2020 to

13   March 2021, and now receives only 4-5 hours per month.  ECF No. 14 at 13, 25-26.  Although

14   prison and jail inmates must be provided opportunities for exercise, restrictions for security

15   reasons do not violate the Constitution.  LeMaire v. Maass, 12 F.3d 1444, 1457-1958 (9th Cir.

16   1993) (upholding long-term denial of outdoor exercise to prisoner posing serious security risk

17   who can exercise in his cell).  As a pretrial detainee, plaintiff can only state a claim by providing

18   facts that show the restriction rises to the level of punishment and is not a permissible "regulatory

19   restraint" justified by security considerations.  See Bell, 441 U.S. at 537.  He must also allege

20   facts demonstrating punitive intent.  See Demery, 378 F.3d at 1029.  Although plaintiff has been

21   informed of this requirement, the SAC is devoid of such allegations.

22        The SAC, like the FAC, lacks concrete information about plaintiff's opportunities for

23   alternative indoor exercise or any asserted security reasons provided by jail officials for the

24   limitations on his outside exercise.  Plaintiff does not specify whether his current limited exercise

25   schedule is common to all TSU inmates or unique to him.  Plaintiff also fails to specify the jail's

26   rationale for the alleged six-month total denial of outdoor exercise—the dates of which notably

27   coincide with the peak of the COVID-19 pandemic, during which the jail was frequently on shut-

28   down status for emergency health reasons.  These factual gaps defeat the required showing that

1    the exercise restrictions lack security justification and were intended to punish plaintiff.

2       V.     <u>Further Leave to Amend is Not Warranted</u>

3        Leave to amend need not be granted when amendment would be futile. <u>Hartmann v.</u>

4 <u>CDCR</u>, 707 F.3d 1114, 1130 (9th Cir. 2013). A history of failure to cure deficiencies supports

5 denial of further leave to amend. <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Plaintiff has

6 twice been granted leave to amend, and provided information about the elements of his putative

7 claims and the deficiencies of his pleading. The religious diet claim is the only one which has

8 been successfully amended. The versions of Claims One through Four presented in the Second

9 Amended Complaint are not substantively different from those of the First Amended Complaint,

10 and the undersigned concludes that there are no additional facts plaintiff can allege that would

11 state claims upon which relief could be granted. Further leave to amend therefore should be

12 denied as futile, and the case should proceed on Claim Five only.

13                      <u>CONCLUSION</u>

14       In accordance with the above, IT IS HEREBY RECOMMENDED that:

15       1. This case proceed on Claim Five of the Second Amended Complaint only, against the

16 following defendants:

17         a. Chaplain Terry Toliver;

18         b. Sheriff Scott Jones, in his official capacity, for purposes of injunctive relief

19         only; and

20       2. Claims One through Four of the Second Amended Complaint, ECF No. 14, and

21 defendants Luke, McKrasie, Hampton, Schaller, Pfau, and Saika, be dismissed pursuant to 28

22 U.S.C. § 1915A.

23       These findings and recommendations are submitted to the United States District Judge

24 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

25 days after being served with these findings and recommendations, plaintiff may file written

26 objections with the court and serve a copy on all parties. Such a document should be captioned

27 ////

28 ////

1   "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

2   failure to file objections within the specified time may waive the right to appeal the District

3   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4   DATED: August 18, 2021

5

6   ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28