UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD DEAN YANDELL,<br>Plaintiff,<br>v.<br>DONALD WASHINGTON, et al.,<br>Defendants. | No. 2:21-cv-0469 DAD AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California state prisoner proceeding pro se in this civil rights action brought under 42 U.S.C. § 1983, which challenges his former conditions of confinement at the Sacramento County Main Jail. Defendants have moved for summary judgment. ECF No. 83. Plaintiff opposes the motion, ECF No. 87, and defendants filed a reply, ECF No. 88. For the reasons set forth below, the undersigned recommends that the motion be granted.

I. Background

A. Procedural History

At the time plaintiff filed the initial complaint in this case, he was serving a sentence of 65 years to life in the custody of the California Department of Corrections and was also facing criminal RICO charges in Case No. 2:19-cr-0107 KJM (E.D. Cal.). He was being held for federal pretrial purposes at the Sacramento County Jail. Plaintiff filed a motion to proceed in forma pauperis, which was granted (ECF No. 8), and motion for preliminary injunction, which was

denied (ECF Nos. 10, 12).

After several rounds of screening and amendment, followed by litigation of a motion to dismiss and a motion to restore previously-dismissed claims, it was ordered that the case proceed on the Third Amended Complaint (ECF No. 54) as follows: Claim One (denial of due process by placement in the total separation housing unit without notice or hearing), against defendants Jones, Luke, and Saika; Claim Two (violation of First Amendment rights by failure to provide a confidential attorney-client visiting area), against defendants Jones and Luke; and Claim Three (violation of right to free exercise of religion by denial of a vegetarian diet), against defendant Toliver only. All other defendants were dismissed. ECF No. 63.

B. Overview of Plaintiff's Claims

During his time at the Sacramento County Main Jail, plaintiff was housed in the Total Separation Unit ("TSEP"), aka ADSEG-1, where he was single-celled and restricted to his cell up to 22 hours a day. He alleges that he "was not given notice nor any type of hearing consistent with due process explaining why plaintiff was being housed in long term isolation." ECF No. 54 at 6.

Attorney-client visits for TSEP inmates took place in a non-confidential setting. Id. at 7, 11. Attached to the Third Amended Complaint are numerous declarations that were submitted in plaintiff's criminal case (on behalf of plaintiff and his co-defendants by their attorneys and investigators) to demonstrate that the TSEP visiting booths were not soundproof, conversations could be overheard, and that attorney-client communications were adversely affected by the lack of confidentiality. Id. at 33-51.

As to the free exercise claim, plaintiff alleges that he is a Buddhist and requested vegetarian meals, which were denied to him. Id. at 8, 13-14. Plaintiff alleges that defendant Toliver, the jail chaplain, denied the request because plaintiff had not requested a vegetarian diet upon arrival at the jail. Id. The exhibit attached to the complaint to document this point shows that Toliver denied the request because plaintiff had not identified himself as Buddhist (or as having any religious preference) on arrival at the jail, raising a question about his religious beliefs. Id. at 25.

II. The Motion for Summary Judgment

A. Overview

Defendants move for summary judgment on the following grounds: (1) Claim One fails because ample evidence supported the decision to house plaintiff in TSEP/Ad Seg 1[1] and because defendants are entitled to qualified immunity; (2) Claim Two fails because no defendant overheard any of plaintiff's confidential conversations and because defendants are entitled to qualified immunity; (3) Claim Three fails because the denial of a vegetarian diet did not substantially burden plaintiff's ability to exercise his religion, especially in light of evidence that he purchased meat products from the jail commissary and iCare throughout his incarceration; and (4) all claims are barred as administratively unexhausted. ECF No. 83-1.

The undersigned finds it necessary to address only the exhaustion issue.

B. Standards on Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need

[1] Defendants maintain that plaintiff's housing designation was appropriate in light of the fact that he was serving a 65-to-life sentence for double murder; was a high-ranking member of the Aryan Brotherhood, a gang known for violence; was charged in federal court with RICO conspiracy involving acts committed while incarcerated; and needed to be separated from co-defendants who were detained in the same facility.

only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

C. Exhaustion of Administrative Remedies

1. Overview

Defendants seek summary judgment on the grounds that plaintiff's claims are administratively unexhausted because plaintiff failed to appeal the denial of any of the grievances he submitted at the jail. Plaintiff contends in opposition that he exhausted all available remedies by completing the only grievance form that was available to him. He argues that because the jail handbook describes written appeal to the facility commander as permissive rather than mandatory, further exhaustion was not required. ECF No. 87 at 7-8.

2. Exhaustion Requirement of the Prison Litigation Reform Act

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 578 U.S. 632, 638 (2016)

(quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the institution's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff is required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

3. Facts Related to Exhaustion[2]

Sacramento County Jail provides a grievance system that inmates may use to raise complaints about anything they believe violates their rights. Decl. Of Brandon Luke, ¶ 8 (ECF No. 83-3 at 80). The grievance procedures are outlined in the Inmate Handbook, which is provided to all inmates. Id. Inmates receive written responses to their grievances, and if dissatisfied with a response may submit a written appeal to the Facility Commander within 5 days of the initial reply. Id.; see also ECF No. 83-3 at 31-33 (Inmate Handbook). The Handbook includes instructions for sending a Facility Commander's Appeal via the jail's confidential correspondence/legal mail system. ECF No. 83-3 at 133. Plaintiff was provided with a copy of the Inmate Handbook. Id. at

[2] Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon full review of the record, to be undisputed by competent evidence. Defendants' Statement of Undisputed Facts ("DUF") is at ECF No. 83-2. The court notes that plaintiff has failed to file a separate document in response to defendants' statement of undisputed facts that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b). "Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

13-14 (Yandell Depo.).

On January 13, 2021, plaintiff submitted a grievance raising numerous issues, including his confinement in TSEP without notice and hearing, denial of confidential attorney visits, and denial of a vegetarian religious diet. ECF No. 54 (Third Amended Complaint) at 17. This grievance was denied on February 12, 2021, with written findings. Id. at 19. Petitioner did not submit an appeal to the facility commander.

Plaintiff had also submitted two previous grievances regarding his diet, both in March 2020. The first grievance complained that Chaplain Toliver had not approved plaintiff's request for a religious diet. Id. at 22. The response, which was completed by Toliver, stated:

> The inmate did not declare a religious preference when classified. He stated "no preference." When the inmate explains the contradiction and demonstrates a "sincere religious conviction," his request will be properly considered.

Id. at 25. Ten days later, plaintiff submitted another grievance which requested a vegetarian diet "under Senate Bill 1138… for personal and health reasons." Id. at 24. The response to this grievance stated that plaintiff's request for a special diet must go through the chaplain. Id. It is undisputed that plaintiff did not appeal either of these denials to the facility commander.

At his deposition, plaintiff testified that he did not know that he was supposed to appeal the denial of a grievance. ECF No. 83-3 at12. His responses to questioning reflected possible confusion about what was required for exhaustion and/or what counts as an "appeal", but also clearly demonstrated knowledge that the "rule book" said a grievance could be mailed to the jail commander. Id. at 12-13.

4. Discussion

Defendants have identified evidence, undisputed by plaintiff, showing that there was an administrative remedy available to plaintiff which he did not exhaust: appeal to the facility commander. Defendants have thus satisfied their initial burden on the defense of non-exhaustion. See Albino, 747 F.3d at 1172 (defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust it). Accordingly, the burden shifts to plaintiff to "come forward with evidence showing that there is something in his particular case

that made the existing and generally available administrative remedies effectively unavailable to him." Id.

Plaintiff does not argue that appeal was effectively unavailable to him, and he has never alleged that he made attempts to seek further review which were thwarted by jail staff. See Ross, 578 U.S. at 643-644 (discussing circumstances under which remedies may be deemed "unavailable" although officially on the books, because not practically capable of use). Rather, plaintiff argues exclusively that the exhaustion requirement was satisfied by the filing of his initial grievance(s), because appeal is not mandatory under jail policy as reflected in the Inmate Handbook:

> The Jail Handbook says you may appeal any decision, but does not demand that as an exhaustion requirement…
>
> …[T]he Handbook states "inmates dissatisfied with grievance reply or those who feel they are being retaliated against 'may' file an appeal in writing to the facility commander." That's a far cry from saying "have to" or "must".

ECF No. 87 at 7-8.

It is the PLRA, not the jail, which establishes the requirement that an inmate exhaust all available administrative remedies before bringing suit. That the jail does not itself "demand" appeals is irrelevant. It is also immaterial that the Inmate Handbook does not affirmatively inform inmates of PLRA's requirements and how to satisfy them. An institution's internal procedural rules about *how* to appeal matter because they must be followed in order to exhaust within the meaning of the PLRA. Jones, 549 U.S. at 218. This means that plaintiff was required to submit a Facility Commander's Appeal within five days of the response to his grievance, by mailing it to the address provided in the Handbook. See ECF No. 83-3 at 133. No particular form needed to be completed. Plaintiff could have complied with the jail's process and exhausted his claims by writing out his objections to the initial denial of his grievance, writing "Facility Commander's Appeal" at the top, and placing the document into legal mail. See id.

Plaintiff's misunderstanding of the PLRA's exhaustion requirement and/or the jail's procedures do not provide a basis for exhaustion to be excused. See Ross, 578 U.S. at 639 (courts lack authority to excuse PLRA exhaustion requirement on any grounds other than the

unavailability of remedies); id. at 642 (misunderstanding of grievance procedure does not render the process "unavailable" for exhaustion purposes); see also Napier v. Laurel Cnty., Ky., 636 F.3d 218, 222 n.2 (6th Cir. 2011) ("A plaintiff's failure to exhaust [under the PLRA] cannot be excused by his ignorance of the law or the grievance policy.").

Because defendants have met their burden of production and plaintiff has not identified any evidence that could support a theory of unavailable remedies under Ross, the motion for summary judgment should be granted on grounds of non-exhaustion.

D. The Court Declines to Address the Other Asserted Grounds for Summary Judgment

Plaintiff's failure to administratively exhaust his claims bars all three claims for relief. Accordingly, the court need not address the state of the evidence as to the alleged constitutional violations or defendants' assertions of qualified immunity.

## CONCLUSION

For the reasons explained above, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, ECF No. 83, be GRANTED, judgment be entered for defendants, and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). **Due to exigencies of the court's calendar, extensions of time to file objections are strongly disfavored. Objecting parties need only identify the portions of the Findings and Recommendations to which objection is made; briefing is not required.**

DATED: September 11, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE